Chief Justice Bibb
delivered the Opinion of the Court.
Asunt Woods obtained from the commissioners a certificase of his right to a settlement, for 400 a civs, on the waters of Boone’s Creek, adjoining Col. David Robinson’s survey to the East, including a small sinking spring, which empties into a big pondj and the pre-emption of 1000 acres adjoining.
The pre-emption warrant was obtained, No. 720, in the name of Austin Eastin, assignee of Abijah Woods, entered in June 1780, surveyed September 5.7, 1788, for Austin Eastin, assignee of Abijah Woods, as to 792 acres, on the 9th December, 1788, Samuel Boone being the proprietor of the warrant, caused tiie whole warrant and survey to be assigned by Austin Eastin to Charles Morgan.
9th February, 1791, Charles Morgan obtained a grant in his name, as assignee of Austin Kustiu, assignee of A. Woods, for 792 acres, upon the survey of 1738.
9th April, 1/791, Charles Morgan executed to Samuel Boone his obligation to convey to him, according to the quantity of land which Morgan should obtain, anti Boone should maintain a good right to, out of the aforesaid, pre-emption of Augustin *292 Easlin, assignee of Ahijah Woods, which bad been assigned to said Morgan, a like quantity, to be taken where Boone then lived, out of Morgan’s claim, of 1300 arres, and the deficiency made up in lauds of equal quality, on the waters of Licking, within fificen miles from where the trace from Strond’s station to the upper Blue Licks crosses Hingston’s fork.
Boone's covenant to Morgan.
Assigned by Boone to Samuel jun and Jones.
Allegations of the bill of Morgan, the younger, Jones and Bradley.
The. title to Boone, to be made as soon as it could be truly determined what quantity of land the, said Morgan had a good right to, in the assigned pro emption.
On the same day, Boone by his writing, also under soul, reciting Morgan’s bond to Boone, agreed with Morgan to discount ten acres of land, which Boone had received satisfaction for, from Wade, and also so much tand, as shall up, said Morgan’s proportion of the, surplus gained in his survey of 1300 acres, and Richard Wade’s and Leonard K. Bradley's surveys, included together, making 500 acres, according to the agreement between Morgan and Bradley, and that all former contracts and writings concerning said exchange of lands between them, should be void.
On the 10th January, 179.5, Samuel Boone assigned Morgan’s obligation to Samuel Boone, jun. and Roger Jones.
On the 25th January, 1317, the assignees, together with Leonard K. Bradley, whom Joules and Boone acknowledge to he entitled to part of the land, exhibited then’ bill against Morgan, a ml charge, that Morgan had taken possession under the pre-emption assigned to him by Boone, and obtained a patent in his own name, and had held free, and peaceble possession, under said patent, of 5121 acres thereof, for 33 or 34 yeas, that being the quantity saved of said claim, that Morgan holds but 247 acres of the claim, whereon said Samuel Boone was settled by Morgen; for the whole of which they claim a a conveyance; that Morgan has no other lands whereof to satisfy his said obligation to Boone, having fraudulantly conveyed away the lands which *293 came within the description, or if he retains any such, he will not discover them.
Prayer for specific performance.
Morgan’s answer.
Amended answer.
They pray a conveyance of the 247 acree, and the balance to he conveyed to Bradley, if Morgan has the lands to make up the quantity of 521 acres, if not, then compensation in damages for tho defidency.
Morgan denies that 521 acres are saved, but only 40 acres of Woods’ pre-emption, and claims the discount of the ten acres, and of 100 acres or upwards, for surplus, according to Samuel Boone’s writing, bearing even date with the bond.
The defendant exhibits a copy of a letter dated on the 17th December, 1816, to the complainants, in which he proffers to come to a settlement, and to convoy the land, according to his bond; as it was then clearly to be ascertained how much land they are entitled to, the dispute with the interfering claim of Robinson being settled, proposing to meet them, if not later than 10 o’clock of that day, at any suitable place| and if they cannot agree, then to submit it to arbitration, and enter into bond in heavy penalty, to abide the award; if they fail to meet, lie threatens the most extravagant demands for rent of the cleared land, at eight dollars per annum, for every acre in their possession, and to sell the land &c.
The defendant also states that Robinson brought suit against him, upon an interference, with said Woods’ pre-emption, and in that suit the Court of Appeals directed how the pre-emption entry should be surveyed; that he then relinquished any further controversy, with interfering claimants, where their patents were older, and yielded to such superior claims, and to the settlement right of Woods; that, only 140 acres of the pre-emption will be saved, to only thirty acres whereof the complainants are entitled.
29th July, 1820, Morgan filed an amended answer by winch he states that under the exchange, he put Boone, into possession of a tract supposed to certain acres, hut which he has reason to be *294 licre contains abmit 500 acres; that after a tedious litigation, he got the opinion of the Court of Appeals, May 3d, 1803, in printed decisions, directing the position of Woods’ settlement and pre-emption, which so surveyed, gives to Boone’s claim 178 acres, the residue of the survey being taken by Robinson’s settlement and prescription, Woods’ settlement, and Craig’s Treasury Warrant; that taken by Robinson's claim, appearing to have been with the consent of Boone, by compromise — the portion taken by the settlement of Woods, belongs to the respondent, and by the rule of decisions has the preference, where the settlement and pre-emption of the same party covers the same land, as here, fie charges that Austin Eastin entered the pre-emption to cover the settlement, that Woods had no ha.id in it, and Boone claimed under Eastin; the residue taken by Craig’s claims, whose grants are the elder. and from the shape, given by the. Court of Appeals to Woods’ claim, it became manifest that th& title of Craig was paramount for the land, outside of the figure directed for Woods, in the case aforesaid, and to avoid an ejectment by Craig, that the respondent admitted his right, and purchased the land, and received Craig’s title on the 24th August, 1811, which land the respondent had sold to Jacob Fishback, and purchased Craig’s title, to prevent Fishback from being ousted; that in the tract of 247 acres, there is a surplus of 24 3-4 acres, which Boone by his agreement is hound to account for; which with the 10 acres mentioned in said covenant, deducted from the. land saved, leaves only a balance of 144 J-4 acres, which this respondent has altintately obtained, under the exchange, for the 247 acres, but which contains 500 acres; and, therefore, he pray a that the complainants restore the residue, offering by his answer to convey the quantity of 144 1-4 acres, laid off in some reasonable shape.
Insurance.
It appears in evidence, that on the 27th day of September, 1788, a survey for 300 acres was made, for Abijah Wood, upon his settlement, by Charles Morgan, as Deputy Surveyor, but it does not appear that any grant was ever obtained soon that *295 survey to Woods, Morgan, or any one else; that on the same day, by Charles Morgan, as Deputy Surveyor, and by the same chain carriers and markers, the survey for Austin Eastin, assignee of Abijah Woods for 792 acres, was made, the survey of 300 acres, made on the settlement. On the 9th of December, 1788, the survey of 792 acres was assigned to said Charles Morgan by said Eastin, and carried into grant to Morgan, the assignee, that as early as 1787, said Charles Morgan sold part of the land so surveyed, by virtue of the pre-emption to Jacob Fishback; another part to Compton, and leased to Hathaway, all three of whom settled on the land in that year; and that said Morgan and his vendees and tenants have ever since held possession; that the interference between Robinson’s settlement and pre-emption, and Morgan, assignee of Woods’ pre-emption, was on the 2d July, 1814, compromised by the owners of Robinson’s claim of the one part, and by Boone and Fishback as the agents of Morgan, of the other part, whereby a dividing line, was agreed and established, and mutual releases executed, so that the quantity of 521 acres of Woods’ pre-emption, was left to Morgan.
Sam'l. Boone jun. dies and his heirs introduced.
Heirs of Boone, the elder, made parties.
Decree of the circuit court.
On the 24th August, 1811, a deed was executed by John Craig to Charles Morgan, in consideration of one dollar, for parts of Craig’s grants of 200, 2000 and 1000 acres, being so much thereof as interfered with the pre-emption of Woods. This deed is a mere quit claim, expressing that Craig is not to be accountable in any way.
Samuel Boone died and his heirs were made complainants.
By an amended bill, the heirs of Samuel Boone, Sen. the assignor, were made parties, and answered confessing the assignment, and right of the complainants. It is also staled that said Boone died intestate, and that no administration, has been granted--And Charles Morgan’s heirs were made parties, upon his death.
Upon heaving, the circuit judge took 521 acres, *296 to be the quantity of Woods’ pre-emption, saved Lo Morgan; he credited the ten acres agreed to be discounted, and by his interlocutor ordered a survey, to ascertain the quantity of land in the tract of Morgan, which he agreed to convey to Boone, called 247 acres, which surplus above 247, appeared to he 29 acres, making 276, to which add ten acres, gives 386 acres, to be deducted from 521 acres, leaving 335 acres; for which Morgan should pay in damages; not shewing that he had any lands to satisfy that part of Boone’s claim, according to the obligation. The damages were fixed by reference to the value of the land at the date of the obligation with interest thereon at the rate of five per cent, and a jury being empannelled found the value of 235 acres, at $391 67, interest thereon at five per cent to be $630 91, amounting together to $1022 58. Thereupon a final decree was pronounced, that Morgan should convey to the complainants 276 acres aforesaid, on which Morgan had settled Boone, and stipulated to convey, and for the residue short of 521 acres, that be should pay the damages assessed, and costs: from which Morgan’s heirs appealed.
Examination of Morgan’s defence.
The great effort in Morgan’s answer is, to avail himself of a decree of the Court of Appeals involving part of the land, in which a figure was giving the pre-emption, and by holding Boone to that, get the benefit of other claims, viz: the settlement of Woods, and Craig’s older grants, and of Robirtson’s as so many losses to Boone, and gains to himself. He has not pretended any eviction by title paramount, but endeavours to show that he, might possibly have been evicted, if the adverse claimants bad asserted their claims in duo time and with the effect, he thinks due to their strength, and the weakness of Woods’ pre-emption. But he has never been evicted, nor sued but by Robinson; that suit ended not in an eviction, but by a compromise leaving 521. acres of the pve-emption assigned by Boone to him, untouched and safe. As to the settlement survey of Woods it has never been carried into grant. Morgan says he own-, it. How did he secure it? When! What did he pay for it? Not *297 hing. As to Craig’s elder grants, they never were used against the survey ami entry of Woods’pre-emption, which in dignity was superior to Craig’s Treasury Warrants. When did Morgan purchase in this outstanding legal title of Craig? In after a continued adversary possession of Morgan, commencing simultaneously with the Survey for Woods itt 1788, and never disturbed by Craig. What did Morgan pay for this title? The deed says one dollar. The evidence induces a belief that Morgan did not pay even that. Morgan does not claim to have paid any thing, nor does he ask any compensation for any thing he has paid in perfecting, defending or maintaining the claim assigned by Boone. There is no evidence, nor allegation that lie has paid one dollar. The evidence taken is, (so far as it goes,) that Bonne and Fishback paid the expenses of the suit with Robinson: Morgan being at a distance and not attending to if. From 1787 down to the time of the decree, he has had the use, occupation and benefit of 521 acres, (and part of the time of 792 acres,) assigned by Boone, a whilst Boone has had the possession and benefit of the tract called 247 acres, with the surplus of 29 acres and the ten acres, in all but 286 acres.
If a trustee mortgagee, tenant for life, or purchaser, makes a purchase of an outstanding claim, he shall be considered as holding it in trust.
*297 The utmost that Morgan could be allowed in e quity would be to exhibit his account and evide of the advances made by him for the purchase the claims conflicting with the patent uudeivwhieii be held, as the assignee of Boone; and theijjuj. to put Boone to his election, to consider Mor, bis agent and trustee in making the advanc acquiring those titles or claims of title; or if would not elect, so to consider him, then for gan to surrender the possession he acquired an<T beid, tinder Boone’s claim, and use those conflict tug claims in warfare.
It is a general principle, that if a trustee, mortgagee, tenant for life or purchaser, get an advantage, by being in possession, or behind the back of the party interested, and purchases in an outstanding title, or incumbrance, he shall not use it to his own benefit, and the annoyance of him under whose *298 title he entered, but shall be considered as holding it in trust. It is sufficient for this doctrine to refer to the case of Holridge vs. Gillespie, 2 John. Chy. Rep. 33 34, in which Chancellor Kent has given references to many cases, old and new.
Equity will aid the possessor to obtain remuneration for the costs of such purchases, not allow him to oppose such titles to the other party.
Cost against defendant allowed, because, not of his refusing, but evading to perform his contract.
Contract executed in part, and damages for the balance.
Morgan has not asked to be considered as trustee, he docs not pretend to have paid a dollar; but wishes, as the person in possession under Boone, with a continued possession of about nine and thirty years, to set up outstanding claims never set up against him, but now united with the possession, as claims superior and paramount to Boone’s.
A court of equity will lend its aid in reimbursing or securing all reasonable and fit advances by an agent, trustee or purchaser, to fortify the title, but will never permit or aid an attempt to betray or invalidate the title. These rules have been long settled and well approved. They conduce to good. faith, confidence, and fair dealing. They preserve that equality between the vendor and vendee, as to gain and loss, by purchasing in adversary claims, which equity delights in, and has established as a maxim.
The defendant did not deny the long continued and uninterrupted possession, he did not shew a willingness to convey the lands, to make up the deficiency of the quantity, nor that he had lands to comply with his contract; but claimed possession of part even of the 247 acres, to he re-delivered. By his letter before suit, he manifested a spirit of reluctance and evasion, which well warranted the complainants to resort to a court of equity. Neither did his answers shew any disposition to comply with his contract; and therefore the costs were properly adjudged against him.
For decreeing to the complainants so much of the lands engaged as Morgan could convey, and damages for the residue, which he was unable to convey according to contract, the precedents of McConconnel’s heirs vs. Dunlap’s devisees, Hard. 41, and Jones vs. Shackleford, 2 Bibb 410, will suffice.
Haggin and Triplett, for plaintiffs; Wickliffe, for defendants.
Of the rule of compensation the appellants have 210 cause of complaint.
Decree affirmed, with costs.